**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | ) ) ) | |
| *Plaintiffs*, | ) ) | C.A. No. 3:25-CV-00631 |
| v. | ) ) | |
| THE BANK OF NEW YORK MELLON CORPORATION, | ) ) ) | **JURY TRIAL DEMANDED** |
| *Defendant*. | ) ) ) | |

## <u>COMPLAINT FOR PATENT INFRINGEMENT</u>

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "Intellectual Ventures" or "Plaintiffs"), in their Complaint of patent infringement against Defendant The Bank of New York Mellon Corporation ("BNY Mellon" or "Defendant"), hereby allege as follows:

## <u>NATURE OF THE ACTION</u>

1.     This is a civil action for the infringement of United States Patent Nos. 7,721,282 (the "'282 Patent"), 7,712,080 (the "'080 Patent"), 7,822,841 (the "'841 Patent"), 8,352,584 (the "'584 Patent"), and 8,332,844 (the "'844 Patent") (collectively, the "Patents-in-Suit") under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

## THE PARTIES

### Intellectual Ventures

2.     Plaintiff Intellectual Ventures I LLC ("Intellectual Ventures I") is a Delaware limited liability company having its principal place of business located at 14360 SE Eastgate Way, Bellevue, WA 98007.

3.     Plaintiff Intellectual Ventures II LLC ("Intellectual Ventures II") is a Delaware limited liability company having its principal place of business located at 14360 SE Eastgate Way, Bellevue, WA 98007.

4.     Intellectual Ventures I is the exclusive licensee of the '080 Patent.

5.     Intellectual Ventures II is the owner of all rights, title, and interest in and to the '282 Patent, the '841 Patent, the '584 Patent, and the '844 Patent.

### BNY Mellon

6.     Upon information and belief, BNY Mellon is a corporation organized and existing under the laws of Delaware with a principal place of business located at 240 Greenwich Street, New York, New York 10286.[1] On information and belief, BNY Mellon does business itself, or through its subsidiaries, affiliates, and agents, in the State of Texas and the Northern District of Texas.

7.     Upon information and belief, BNY Mellon advertises itself on its website that it "provide[s] comprehensive solutions throughout the financial lifecycle, assisting clients in creating, administering, managing, transacting, distributing, and optimizing their assets.

---

[1]     BNY Mellon Form 10-K for the Fiscal Year ended December 31, 2023 (https://www.bnymellon.com/content/dam/bnymellon/documents/pdf/investor-relations/form-10-k-2023.pdf), pp. 5, 8.

Leveraging technology, data management, analytics, and insights, our solutions deliver the full capabilities of BNY."[2]    In its annual Form 10-K filing with the Securities and Exchange Commission, BNY Mellon stated: "We divide our businesses into three principal business segments: Securities Services, Market and Wealth Services and Investment and Wealth Management.  We also have an other segment, which includes the leasing portfolio, corporate treasury activities (including our securities portfolio), derivatives and other trading activity, corporate and bank-owned life insurance, renewable energy and other corporate investments and certain business exits."[3]

8.    Upon information and belief, BNY Mellon makes, utilizes, services, tests, distributes, and/or offers in the State of Texas and the Northern District of Texas financial services and technologies ("Accused Systems and Services") thereof that infringe the Patents-in-Suit, contributes to the infringement by others, and/or induces others to commit acts of patent infringement in the State of Texas and the Northern District of Texas.

9.    Upon information and belief, BNY Mellon offers several types of financial services and technologies to its customers, employees, and/or other third parties, including the Accused Systems and Services. BNY Mellon's services utilize systems, including but not limited to Kubernetes, Docker, Kafka, Spark, and Hadoop. These systems and services are used by various financial services and technologies managed by BNY Mellon to enable the financial products and services that it offers to its customers, employees, and/or other third parties. Specifically, BNY

---

[2]    https://www.bny.com/corporate/global/en/solutions/bny-what-we-do.html    (last    accessed February 27, 2025).
[3]    BNY   Mellon   Form   10-K   for   the   Fiscal   Year   ended   December   31,   2023 (https://www.bnymellon.com/content/dam/bnymellon/documents/pdf/investor-relations/form-10-k-2023.pdf), p. 5.

Mellon makes, utilizes, services, tests, distributes, and/or offers these financial systems and services throughout the world, including in the United States and Texas.

10.    BNY Mellon has regular and established places of business, at which it has committed acts of infringement and placed the Accused Systems and Services into the stream of commerce, throughout the State of Texas and the Northern District of Texas. For example, BNY Mellon maintains a BNY Wealth office at 4020 Maple Avenue, Suite 650, Dallas TX 75219.[4] BNY Mellon advertises on its website that "[o]ur BNY Wealth office in Dallas provides local access to BNY's global resources in a convenient Preston Center location. The advisory team has over 225 years of combined experience working with wealth creators and their families.  The team specializes in wealth in motion, including business transitions, marital dissolutions, and wealth transfer."[5]  BNY Mellon advertises that its "solutions in Dallas" include the following services:[6]

---

[4] https://www.bny.com/corporate/global/en/about-us/locations/north-america/united-states.html#p2z (last accessed February 27, 2025); https://www.bny.com/wealth/global/en/about-us/locations/dallas.html#:~:text=Our%20BNY%20Wealth%20office%20in,of%20children%20and%20the%20community. (last accessed February 27, 2025).
[5] https://www.bny.com/wealth/global/en/about-us/locations/dallas.html#:~:text=Our%20BNY%20Wealth%20office%20in,of%20children%20and%20the%20community. (last accessed February 27, 2025).
[6] *Id.*



11.     Upon information and belief, the BNY Mellon locations in this District are regular, continuous, and established physical places of business of BNY Mellon, being established, ratified, and/or controlled by BNY Mellon as authorized locations, which are the places of business at which BNY Mellon makes, utilizes, services, tests, distributes, and/or offers the Accused Systems and Services.

12.    Upon information and belief, BNY Mellon ratifies and holds these BNY Mellon locations out as regular and established places of business of BNY Mellon in this District by listing them on BNY Mellon's website, including, *e.g.*, as shown below:[7]

# Our Wealth Management Services in **Dallas**

For 240 years BNY Wealth has helped successful individuals and families build, manage and sustain their wealth across generations and market cycles. Our Active Wealth approach is grounded in a deep understanding of our clients. For each client, we craft a customized approach around five essential wealth practices: invest, borrow, spend, manage and protect that empowers our clients to confidently navigate the unpredictable and unexpected.

Our BNY Wealth office in Dallas provides local access to BNY's global resources in a convenient Preston Center location. The advisory team has over 225 years of combined experience working with wealth creators and their families. The team specializes in wealth in motion, including business transitions, marital dissolutions, and wealth transfer.

**CONTACT**

Office Phone:
(972) 362-6220

**ADDRESS**

6150 Sherry Lane
Dallas, TX 75225

**View in Google Maps** →

CHRIS GOLD

Market President

13.    Upon information and belief, BNY Mellon further ratifies and holds its BNY Mellon locations out as regular and established places of business of BNY Mellon in this District by recruiting, hiring, training, offering compensation and benefits to, controlling, and/or labeling as authorized or certified BNY Mellon employees and agents some or all of the employees or agents employed in this District, including for example, BNY Mellon wealth managers, investment managers, bankers, customer service representatives, personal bankers, loan officers, trust and estate managers, investment bankers, credit analysts, and managers.[8]

---

[7] *Id.*; *see also* https://www.bny.com/corporate/global/en/about-us/locations/north-america/united-states.html#p2z (last accessed February 27, 2025).
[8] https://www.bny.com/wealth/global/en/about-us/locations/dallas.html#:~:text=Our%20BNY%20Wealth%20office%20in,of%20children%20and%20the%20community (last accessed February 27, 2025).

14.     Upon information and belief, BNY Mellon further ratifies and holds these BNY Mellon locations out as regular and established places of business of BNY Mellon by providing them with promotions and sharing customer data with these BNY Mellon locations to offer customized BNY Mellon services.

15.     Upon information and belief, BNY Mellon has established, ratified, and holds these BNY Mellon locations out as regular and established places of business of BNY Mellon by directing and controlling these BNY Mellon locations' actions and services in the foregoing manner, and has consented to these BNY Mellon locations acting on BNY Mellon's behalf and being BNY Mellon's places of business whereby the Accused Systems and Services are made, utilized, serviced, tested, distributed, and/or offered and placed into the stream of commerce in this District, and these BNY Mellon locations have consented to act on BNY Mellon's behalf pursuant to the foregoing terms of control and direction in order to be able to offer financial services that utilize the Accused Systems and Services.

16.     Upon information and belief, BNY Mellon further ratifies and holds these BNY Mellon locations out as regular and established places of business of BNY Mellon in this District by recruiting, hiring, training, offering compensation and benefits to, controlling, and/or labeling as authorized or certified BNY Mellon employees who are software engineers that work on and/or develop the Accused Services and Systems. Upon information and belief, BNY Mellon has numerous technical employees in the Northern District who develop and implement the Accused Systems and Services, including full-stack developers, data engineers, software engineers, data analysts, and developers.[9]

---

[9] https://www.linkedin.com/in/kavyayeravelli/ (last accessed February 27, 2025); https://www.linkedin.com/in/karthikbhukya/ (last accessed February 27, 2025); https://www.linkedin.com/in/snigdha-kollipara/ (last accessed February 27, 2025;

## JURISDICTION AND VENUE

17.    This is an action for patent infringement arising under the patent laws of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

18.    This Court has personal jurisdiction over BNY Mellon because BNY Mellon conducts business in and has committed acts of patent infringement, contributed to infringement by others, and/or induced others to commit acts of patent infringement in this District, the State of Texas, and elsewhere in the United States and has established minimum contacts with this forum state such that the exercise of jurisdiction over BNY Mellon would not offend the traditional notions of fair play and substantial justice. Upon information and belief, BNY Mellon transacts substantial business with entities and individuals in the State of Texas and the Northern District of Texas, by among other things, making, utilizing, servicing, testing, distributing, and/or offering BNY Mellon's services that infringe the Patents-in-Suit, including the infringing Accused Systems and Services thereof that BNY Mellon purposefully directs into the State of Texas and this District as alleged herein, as well as by providing service and support to its customers, partners, vendors, and/or third parties in this District. BNY Mellon places the Accused Systems and Services into the stream of commerce via authorized and established distribution channels with the knowledge and expectation that they will be made, utilized, serviced, tested, distributed, and/or offered in the State of Texas, including this District.

19.    BNY Mellon is subject to this Court's general and specific jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to BNY Mellon's substantial business

https://www.linkedin.com/in/vikrams2/ (last accessed February 27, 2025);
https://www.linkedin.com/in/pavanispaug/ (last accessed February 27, 2025);
https://www.linkedin.com/in/sanjana-thandra-887233247/ (last accessed February 27, 2025);
https://www.linkedin.com/in/kirangangaraju025/ (last accessed February 27, 2025);
https://www.linkedin.com/in/hari-nukala76/ (last accessed February 27, 2025).

in the State of Texas and this District, including through its past infringing activities, because BNY Mellon regularly does and solicits business herein, and/or because BNY Mellon has engaged in persistent conduct and/or has derived substantial revenues from offered financial services that utilize the Accused Systems and Services offered to partners, vendors, and/or third parties in the State of Texas and this District.

20.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because BNY Mellon resides in this District as it maintains numerous regular and established places of business in this District, and has committed and continues to commit acts of infringement in this District giving rise to this Action.

## FACTUAL BACKGROUND

21.     Intellectual Ventures Management, LLC ("Intellectual Ventures Management") was founded in 2000. Since then, Intellectual Ventures Management has been involved in the business of inventing. Intellectual Ventures Management facilitates inventions by inventors and the filing of patent applications for those inventions, collaboration with others to develop and patent inventions, and the acquisition and licensing of patents from individual inventors, universities, corporations, and other institutions. A significant aspect of Intellectual Ventures Management's business is managing the plaintiffs in this case, Intellectual Ventures I and Intellectual Ventures II.

22.     One of the founders of Intellectual Ventures Management is Nathan Myhrvold, who worked at Microsoft from 1986 until 2000 in a variety of executive positions, culminating in his appointment as the company's first Chief Technology Officer ("CTO") in 1996. While at Microsoft, Dr. Myhrvold founded Microsoft Research in 1991 and was one of the world's foremost

software experts. Between 1986 and 2000, Microsoft became the world's largest technology company.

23.    Under Dr. Myhrvold's leadership, Intellectual Ventures acquired more than 70,000 patents covering many inventions important to financial institutions.

24.    BNY Mellon offers several types of financial services and technologies to its customers, employees, and/or third parties. BNY Mellon's services utilize systems, including but not limited to Docker, Kubernetes, Kafka, Spark, and Hadoop. These systems and services are used by various financial services and technologies managed by BNY Mellon to enable the financial products and services it offers to its customers, employees, and/or third parties. Specifically, BNY Mellon makes, utilizes, services, tests, distributes, and/or offers these financial systems and services throughout the world, including in the United States and Texas.

## THE PATENTS-IN-SUIT

### U.S. Patent No. 7,721,282

25.    On May 18, 2010, the PTO issued the '282 Patent, titled "Block-Level I/O Subsystem For Distributed Application Environment Management."  The '282 Patent is valid and enforceable. A copy of the '282 Patent is attached as Exhibit 1.

26.    Intellectual Ventures II LLC is the owner of all rights, title, and interest in and to the '282 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover past damages for infringement of the '282 Patent.

### U.S. Patent No. 7,712,080

27.    On May 4, 2010, the PTO issued the '080 Patent, titled "Systems and Methods for Parallel Distributed Programming." The '080 Patent is valid and enforceable. A copy of the '080 Patent is attached as Exhibit 2.

28.      Intellectual Ventures I LLC is the exclusive licensee under the '080 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover past damages for infringement of the '080 Patent.

### U.S. Patent No. 7,822,841

29.      On October 26, 2010, the PTO issued the '841 Patent, titled "Method and System for Hosting Multiple, Customized Computing Clusters."  The '841 Patent is valid and enforceable. A copy of the '841 Patent is attached as Exhibit 3.

30.      Intellectual Ventures II LLC is the owner of all rights, title, and interest in and to the '841 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover past damages for infringement of the '841 Patent.

### U.S. Patent No. 8,352,584

31.      On January 8, 2013, the PTO issued the '584 Patent, titled "Systems for Hosting Customized Computing Clusters."  The '584 Patent is valid and enforceable. A copy of the '584 Patent is attached as Exhibit 4.

32.      Intellectual Ventures II LLC is the owner of all rights, title, and interest in and to the '584 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover past damages for infringement of the '584 Patent.

### U.S. Patent No. 8,332,844

33.      On December 11, 2012, the PTO issued the '844 Patent, titled "Root Image Caching and Indexing for Block-level Distributed Application Management."  The '844 Patent is valid and enforceable. A copy of the '844 Patent is attached as Exhibit 5.

34.     Intellectual Ventures II LLC is the owner of all rights, title, and interest in and to the '844 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover past damages for infringement of the '844 Patent.

## COUNT I

## (BNY Mellon's Infringement of U.S. Patent No. 7,721,282)

35.     Intellectual Ventures incorporates paragraphs 1 through 34 herein by reference.

36.     **Direct Infringement.** BNY Mellon, without authorization or license from Intellectual Ventures, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '282 Patent, by making, utilizing, servicing, testing, distributing, and/or offering the Accused Systems and Services that infringe the '282 Patent, including but not limited to at least the Accused Systems and Services identified in the example charts incorporated, per paragraph 45 below, into this Count (collectively, "Example BNY Mellon Count I Systems and Services") that infringe at least the example claims of the '282 Patent identified in the charts incorporated into this Count (the "Example '282 Patent Claims") literally or by the doctrine of equivalents.

37.     On information and belief, BNY Mellon has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '282 Patent Claims, by internal testing and use of the Example BNY Mellon Count I Systems and Services.

38.     BNY Mellon has known that its infringing systems and services, such as the Example BNY Mellon Count I Systems and Services, cannot be used without infringing the technology claimed in the '282 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

39.    **Willful Blindness.** BNY Mellon knew of the '282 Patent, or should have known of the '282 Patent, but was willfully blind to its existence. BNY Mellon has had actual knowledge of the '282 Patent not later than receipt of a letter, dated March 14, 2025, and received on the same date. By the time of trial, BNY Mellon will have known, since receiving such notice, that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '282 Patent. *See* Exhibit 6 (Notice Letter).

40.    **Induced Infringement.** BNY Mellon has also contributed to and/or induced and continues to contribute to and/or induce the infringement of the '282 Patent by contributing to and/or inducing its partners, vendors, and/or third parties to use or cause to use its systems and services, such as Example BNY Mellon Count I Systems and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, and/or third parties to infringe the '282 Patent. For example, on information and belief, BNY Mellon offers products and services to its customers and/or employees that are associated with backend functionality provided by the Example BNY Mellon Count I Products and Services. BNY Mellon has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '282 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with backend functionality provided by the Example BNY Mellon Count I Products and Services.

41.    BNY Mellon therefore actively, knowingly, and intentionally has committed, and continue to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '282 Patent with knowledge of the '282 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '282 Patent. BNY Mellon has actively induced others, including, but not limited to, partners, vendors, and/or

third parties who use the Example BNY Mellon Count I Systems and Services to infringe the '282 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example BNY Mellon Count I Systems and Services.

42.     **Contributory Infringement.** BNY Mellon actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia,* knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '282 Patent by its partners, vendors, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '282 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

43.     BNY Mellon therefore actively, knowingly, and intentionally has been and continues to materially contribute to their customers', partners', vendors', and/or third parties' infringement of the '282 Patent, literally and/or by the doctrine of equivalents, by making, utilizing, servicing, testing, distributing, and/or offering Example BNY Mellon Count I Systems and Services for use in a manner that infringes one or more claims of the '282 Patent. Example BNY Mellon Count I Systems and Services are especially made or adapted for infringing the '282 Patent and have no substantial non-infringing use.

44.     Exhibit 7 (claim chart) includes the Example BNY Mellon Count I Systems and Services and Example '282 Patent Claims. As set forth in these charts, the Example BNY Mellon Count I Systems and Services practice the technology claimed by the '282 Patent. Accordingly,

the Example BNY Mellon Count I Systems and Services incorporated in these charts satisfy all elements of the Example '282 Patent Claims.

45.    Intellectual Ventures therefore incorporates by reference in its allegations herein the claim chart of Exhibit 7.

46.    Intellectual Ventures is entitled to recover damages adequate to compensate for BNY Mellon's infringement of the '282 Patent and will continue to be damaged by such infringement. Intellectual Ventures is entitled to recover damages from BNY Mellon to compensate it for BNY Mellon's infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

47.    Further, BNY Mellon's infringement of Intellectual Ventures's rights under the '282 Patent will continue to damage Intellectual Ventures's business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

### COUNT II

### (BNY Mellon's Infringement of U.S. Patent No. 7,712,080)

48.    Intellectual Ventures incorporates paragraphs 1 through 47 herein by reference.

49.    **Direct Infringement.** BNY Mellon, without authorization or license from Intellectual Ventures, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '080 Patent, by making, utilizing, servicing, testing, distributing, and/or offering the Accused Systems and Services that infringe the '080 Patent, including but not limited to at least the Accused Systems and Services identified in the example charts incorporated, per paragraph 58 below, into this Count (collectively, "Example BNY Mellon Count II Systems and Services") that infringe at least the example claims of the '080

Patent identified in the charts incorporated into this Count (the "Example '080 Patent Claims") literally or by the doctrine of equivalents.

50.      On information and belief, BNY Mellon has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '080 Patent Claims, by internal testing and use of the Example BNY Mellon Count II Systems and Services.

51.      BNY Mellon has known that its infringing systems and services, such as the Example BNY Mellon Count II Systems and Services, cannot be used without infringing the technology claimed in the '080 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

52.      **Willful Blindness.** BNY Mellon knew of the '080 Patent, or should have known of the '080 Patent, but was willfully blind to its existence. BNY Mellon has had actual knowledge of the '080 Patent not later than receipt of a letter, dated March 14, 2025, and received on the same date. By the time of trial, BNY Mellon will have known, since receiving such notice, that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '080 Patent. *See* Exhibit 6 (Notice Letter).

53.      **Induced Infringement.** BNY Mellon has also contributed to and/or induced and continues to contribute to and/or induce the infringement of the '080 Patent by contributing to and/or inducing its partners, vendors, and/or third parties to use or cause to use its systems and services, such as Example BNY Mellon Count II Systems and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, and/or third parties to infringe the '080 Patent. For example, on information and belief, BNY Mellon offers products and services to its customers and/or employees that are associated with backend functionality provided by the Example BNY Mellon Count II Products and Services. BNY Mellon has

contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '080 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with backend functionality provided by the Example BNY Mellon Count II Products and Services.

54.     BNY Mellon therefore actively, knowingly, and intentionally has committed, and continue to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '080 Patent with knowledge of the '080 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '080 Patent. BNY Mellon has actively induced others, including, but not limited to, partners, vendors, and/or third parties who use the Example BNY Mellon Count II Systems and Services to infringe the '080 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example BNY Mellon Count II Systems and Services.

55.     **Contributory Infringement.** BNY Mellon actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia,* knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '080 Patent by its partners, vendors, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '080 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

56.     BNY Mellon therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third parties' infringement of

the '080 Patent, literally and/or by the doctrine of equivalents, by making, utilizing, servicing, testing, distributing, and/or offering Example BNY Mellon Count II Systems and Services for use in a manner that infringes one or more claims of the '080 Patent. Example BNY Mellon Count II Systems and Services are especially made or adapted for infringing the '080 Patent and have no substantial non-infringing use.

57.    Exhibit 8 (claim chart) includes the Example BNY Mellon Count II Systems and Services and Example '080 Patent Claims. As set forth in these charts, the Example BNY Mellon Count II Systems and Services practice the technology claimed by the '080 Patent. Accordingly, the Example BNY Mellon Count II Systems and Services incorporated in these charts satisfy all elements of the Example '080 Patent Claims.

58.    Intellectual Ventures therefore incorporates by reference in its allegations herein the claim chart of Exhibit 8.

59.    Intellectual Ventures is entitled to recover damages adequate to compensate for BNY Mellon's infringement of the '080 Patent and will continue to be damaged by such infringement. Intellectual Ventures is entitled to recover damages from BNY Mellon to compensate it for BNY Mellon's infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

60.    Further, BNY Mellon's infringement of Intellectual Ventures's rights under the '080 Patent will continue to damage Intellectual Ventures's business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

## COUNT III

### (BNY Mellon's Infringement of U.S. Patent No. 7,822,841)

61.     Intellectual Ventures incorporates paragraphs 1 through 60 herein by reference.

62.     **Direct Infringement.** BNY Mellon, without authorization or license from Intellectual Ventures, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '841 Patent, by making, utilizing, servicing, testing, distributing, and/or offering the Accused Systems and Services that infringe the '841 Patent, including but not limited to at least the Accused Systems and Services identified in the example charts incorporated, per paragraph 71 below, into this Count (collectively, "Example BNY Mellon Count III Systems and Services") that infringe at least the example claims of the '841 Patent identified in the charts incorporated into this Count (the "Example '841 Patent Claims") literally or by the doctrine of equivalents.

63.     On information and belief, BNY Mellon has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '841 Patent Claims, by internal testing and use of the Example BNY Mellon Count III Systems and Services.

64.     BNY Mellon has known that its infringing systems and services, such as the Example BNY Mellon Count III Systems and Services, cannot be used without infringing the technology claimed in the '841 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

65.     **Willful Blindness.** BNY Mellon knew of the '841 Patent, or should have known of the '841 Patent, but was willfully blind to its existence. BNY Mellon has had actual knowledge of the '841 Patent not later than receipt of a letter, dated March 14, 2025, and received on the same date. By the time of trial, BNY Mellon will have known, since receiving such notice, that its

continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '841 Patent. *See* Exhibit 6 (Notice Letter).

66.    **Induced Infringement.** BNY Mellon has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '841 Patent by contributing to and/or inducing its partners, vendors, and/or third parties to use or cause to use its systems and services, such as Example BNY Mellon Count III Systems and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, and/or third parties to infringe the '841 Patent. For example, on information and belief, BNY Mellon offers products and services to its customers and/or employees that are associated with backend functionality provided by the Example BNY Mellon Count III Products and Services. BNY Mellon has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '841 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with backend functionality provided by the Example BNY Mellon Count III Products and Services.

67.    BNY Mellon therefore actively, knowingly, and intentionally has committed, and continue to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '841 Patent with knowledge of the '841 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '841 Patent. BNY Mellon has actively induced others, including, but not limited to, partners, vendors, and/or third parties who use the Example BNY Mellon Count III Systems and Services to infringe the '841 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including

within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example BNY Mellon Count III Systems and Services.

68.    **Contributory Infringement.** BNY Mellon actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia,* knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '841 Patent by its partners, vendors, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '841 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

69.    BNY Mellon therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third parties' infringement of the '841 Patent, literally and/or by the doctrine of equivalents, by making, utilizing, servicing, testing, distributing, and/or offering Example BNY Mellon Count III Systems and Services for use in a manner that infringes one or more claims of the '841 Patent. Example BNY Mellon Count III Systems and Services are especially made or adapted for infringing the '841 Patent and have no substantial non-infringing use.

70.    Exhibit 9 (claim chart) includes the Example BNY Mellon Count III Systems and Services and Example '841 Patent Claims. As set forth in these charts, the Example BNY Mellon Count III Systems and Services practice the technology claimed by the '841 Patent. Accordingly, the Example BNY Mellon Count III Systems and Services incorporated in these charts satisfy all elements of the Example '841 Patent Claims.

71.     Intellectual Ventures therefore incorporates by reference in its allegations herein the claim chart of Exhibit 9.

72.     Intellectual Ventures is entitled to recover damages adequate to compensate for BNY Mellon's infringement of the '841 Patent and will continue to be damaged by such infringement. Intellectual Ventures is entitled to recover damages from BNY Mellon to compensate it for BNY Mellon's infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

73.     Further, BNY Mellon's infringement of Intellectual Ventures's rights under the '841 Patent will continue to damage Intellectual Ventures's business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

## COUNT IV

### (BNY Mellon's Infringement of U.S. Patent No. 8,352,584)

74.     Intellectual Ventures incorporates paragraphs 1 through 73 herein by reference.

75.     **Direct Infringement.** BNY Mellon, without authorization or license from Intellectual Ventures, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '584 Patent, by making, utilizing, servicing, testing, distributing, and/or offering the Accused Systems and Services that infringe the '584 Patent, including but not limited to at least the Accused Systems and Services identified in the example charts incorporated, per paragraph 84 below, into this Count (collectively, "Example BNY Mellon Count IV Systems and Services") that infringe at least the example claims of the '584 Patent identified in the charts incorporated into this Count (the "Example '584 Patent Claims") literally or by the doctrine of equivalents.

76.     On information and belief, BNY Mellon has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '584 Patent Claims, by internal testing and use of the Example BNY Mellon Count IV Systems and Services.

77.     BNY Mellon has known that its infringing systems and services, such as the Example BNY Mellon Count IV Systems and Services, cannot be used without infringing the technology claimed in the '584 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

78.     **Willful Blindness.** BNY Mellon knew of the '584 Patent, or should have known of the '584 Patent, but was willfully blind to its existence. BNY Mellon has had actual knowledge of the '584 Patent not later than receipt of a letter, dated March 14, 2025, and received on the same date. By the time of trial, BNY Mellon will have known, since receiving such notice, that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '584 Patent. *See* Exhibit 6 (Notice Letter).

79.     **Induced Infringement.** BNY Mellon has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '584 Patent by contributing to and/or inducing its partners, vendors, and/or third parties to use or cause to use its systems and services, such as Example BNY Mellon Count IV Systems and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, and/or third parties to infringe the '584 Patent. For example, on information and belief, BNY Mellon offers products and services to its customers and/or employees that are associated with backend functionality provided by the Example BNY Mellon Count IV Products and Services. BNY Mellon has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '584 Patent by offering such products and services and contributing to and/or inducing its

customers and third parties and/or employees to use such products and services that are associated with backend functionality provided by the Example BNY Mellon Count IV Products and Services.

80.      BNY Mellon therefore actively, knowingly, and intentionally has committed, and continue to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '584 Patent with knowledge of the '584 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '584 Patent. BNY Mellon has actively induced others, including, but not limited to, partners, vendors, and/or third parties who use the Example BNY Mellon Count IV Systems and Services to infringe the '584 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example BNY Mellon Count IV Systems and Services.

81.      **Contributory Infringement.** BNY Mellon actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia,* knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '584 Patent by its partners, vendors, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '584 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

82.      BNY Mellon therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third parties' infringement of the '584 Patent, literally and/or by the doctrine of equivalents, by making, utilizing, servicing,

testing, distributing, and/or offering Example BNY Mellon Count IV Systems and Services for use in a manner that infringes one or more claims of the '584 Patent. Example BNY Mellon Count IV Systems and Services are especially made or adapted for infringing the '584 Patent and have no substantial non-infringing use.

83.    Exhibit 10 (claim chart) includes the Example BNY Mellon Count IV Systems and Services and Example '584 Patent Claims. As set forth in these charts, the Example BNY Mellon Count IV Systems and Services practice the technology claimed by the '584 Patent. Accordingly, the Example BNY Mellon Count IV Systems and Services incorporated in these charts satisfy all elements of the Example '584 Patent Claims.

84.    Intellectual Ventures therefore incorporates by reference in its allegations herein the claim chart of Exhibit 10.

85.    Intellectual Ventures is entitled to recover damages adequate to compensate for BNY Mellon's infringement of the '584 Patent and will continue to be damaged by such infringement. Intellectual Ventures is entitled to recover damages from BNY Mellon to compensate it for BNY Mellon's infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

86.    Further, BNY Mellon's infringement of Intellectual Ventures's rights under the '584 Patent will continue to damage Intellectual Ventures's business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

## COUNT V

## (BNY Mellon's Infringement of U.S. Patent No. 8,332,844)

87.    Intellectual Ventures incorporates paragraphs 1 through 86 herein by reference.

88. **Direct Infringement.** BNY Mellon, without authorization or license from Intellectual Ventures, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '844 Patent, by making, utilizing, servicing, testing, distributing, and/or offering the Accused Systems and Services that infringe the '844 Patent, including but not limited to at least the Accused Systems and Services identified in the example charts incorporated, per paragraph 102 below, into this Count (collectively, "Example BNY Mellon Count V Systems and Services") that infringe at least the example claims of the '844 Patent identified in the charts incorporated into this Count (the "Example '844 Patent Claims") literally or by the doctrine of equivalents.

89. On information and belief, BNY Mellon has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '844 Patent Claims, by internal testing and use of the Example BNY Mellon Count V Systems and Services.

90. BNY Mellon has known that its infringing systems and services, such as the Example BNY Mellon Count V Systems and Services, cannot be used without infringing the technology claimed in the '844 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

91. **Willful Blindness.** BNY Mellon knew of the '844 Patent, or should have known of the '844 Patent, but was willfully blind to its existence. BNY Mellon has had actual knowledge of the '844 Patent not later than receipt of a letter, dated May 14, 2024, and received on the same date. By the time of trial, BNY Mellon will have known, since receiving such notice, that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '844 Patent. *See* Exhibit 11 (Notice Letter Dated May 14, 2024).

92.    **Willful Infringement.** BNY Mellon has had actual knowledge of the '844 Patent at least since May 14, 2024 because it received a Notice of Infringement sent to BNY Mellon via Mr. Gregory Nehro. *See* Exhibit 11 (Notice Letter Dated May 14, 2024). The Notice of Infringement clearly identified the '844 Patent, identified example BNY Mellon products and features relating to Docker, and notified BNY Mellon that at least one of BNY Mellon's products infringed one or more claims of the '844 Patent. The Notice of Infringement included a copy of the '844 Patent. *See* Exhibit 5 ('844 Patent).

93.    Despite BNY Mellon's knowledge of the '844 Patent and infringement of the same, BNY Mellon has infringed and continues to infringe the '844 Patent with full and complete knowledge of the '844 Patent's applicability to BNY Mellon's Docker-related products without taking a license and without a good faith belief that the '844 Patent is invalid and not infringed.

94.    BNY Mellon's infringement has been, and continues to be, willful, deliberate, and flagrant. BNY Mellon has deliberately and flagrantly copied and/or incorporated into its Docker-related products the invention and embodiments described in the '844 Patent despite a known or obvious risk of infringement.

95.    Despite BNY Mellon's knowledge of the '844 Patent, BNY Mellon has sold, offered for sale, manufactured, and imported, infringing products, and continues to do so without adequately investigating the scope of the '844 Patent and without forming a good faith belief that its infringing products do not infringe or that the '844 Patent is invalid. BNY Mellon has not taken any steps to remedy its infringement of the '844 Patent, for example, by removing the infringing products or stopping its use of the Docker-related technology.

96.    BNY Mellon's infringement of the '844 Patent is willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, and flagrant, entitling IV to increased damages under 35

U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

97.    **Induced Infringement.** BNY Mellon has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '844 Patent by contributing to and/or inducing its partners, vendors, and/or third parties to use or cause to use its systems and services, such as Example BNY Mellon Count V Systems and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, and/or third parties to infringe the '844 Patent. For example, on information and belief, BNY Mellon offers products and services to its customers and/or employees that are associated with backend functionality provided by the Example BNY Mellon Count V Products and Services. BNY Mellon has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '844 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with backend functionality provided by the Example BNY Mellon Count V Products and Services.

98.    BNY Mellon therefore actively, knowingly, and intentionally has committed, and continue to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '844 Patent with knowledge of the '844 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '844 Patent. BNY Mellon has actively induced others, including, but not limited to, partners, vendors, and/or third parties who use the Example BNY Mellon Count V Systems and Services to infringe the '844 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example BNY Mellon Count V Systems and Services.

99. **Contributory Infringement.** BNY Mellon actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia,* knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '844 Patent by its partners, vendors, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '844 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

100. BNY Mellon therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third parties' infringement of the '844 Patent, literally and/or by the doctrine of equivalents, by making, utilizing, servicing, testing, distributing, and/or offering Example BNY Mellon Count V Systems and Services for use in a manner that infringes one or more claims of the '844 Patent. Example BNY Mellon Count V Systems and Services are especially made or adapted for infringing the '844 Patent and have no substantial non-infringing use.

101. Exhibit 12 (claim chart) includes the Example BNY Mellon Count V Systems and Services and Example '844 Patent Claims. As set forth in these charts, the Example BNY Mellon Count V Systems and Services practice the technology claimed by the '844 Patent. Accordingly, the Example BNY Mellon Count V Systems and Services incorporated in these charts satisfy all elements of the Example '844 Patent Claims.

102. Intellectual Ventures therefore incorporates by reference in its allegations herein the claim chart of Exhibit 12.

103.    Intellectual Ventures is entitled to recover damages adequate to compensate for BNY Mellon's infringement of the '844 Patent and will continue to be damaged by such infringement. Intellectual Ventures is entitled to recover damages from BNY Mellon to compensate it for BNY Mellon's infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

104.    Further, BNY Mellon's infringement of Intellectual Ventures's rights under the '844 Patent will continue to damage Intellectual Ventures's business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

## DEMAND FOR JURY TRIAL

105.    Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully request a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A.    A judgment that the Patents-in-Suit are valid and enforceable;

B.    A judgment that Defendant directly infringes, contributorily infringes, and/or induces infringement of one or more claims of each of the Patents-in-Suit;

C.    A judgment that awards Plaintiffs all damages adequate to compensate them for Defendant's direct infringement, contributory infringement, and/or induced infringement, of each of the Patents-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

D.    A judgment that awards Plaintiffs all appropriate damages under 35 U.S.C. § 284 for Defendant's past infringement with respect to the Patents-in-Suit;

E.     A judgment that awards Plaintiffs all appropriate damages under 35 U.S.C. § 284 for Defendant's continuing or future infringement, up until the date such judgment is entered with respect to each of the Patents-in-Suit, including ongoing royalties, pre- and post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284;

F.     A judgment that this case is exceptional under 35 U.S.C. § 285;

G.     An accounting of all damages not presented at trial; and

H.     A judgment that awards Plaintiffs their costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by the Court.

Dated:  March 15, 2025

RESPECTFULLY SUBMITTED,

By: /s/ William D. Ellerman
William D. Ellerman (TX Bar No. 24007151)
wellerman@cjsjlaw.com
Ari Rafilson (TX Bar No. 24060456)
arafilson@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES**
8140 Walnut Hill Lane, Suite 105
Dallas, TX 75231
Telephone: (254) 732-2242
Facsimile: (866) 627-3509

Mark D. Siegmund (TX Bar No. 24117055)
msiegmund@sjcjlaw.com
Shuya "Grace" Yang (TX Bar No. 24144144)
gyang@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES**
7901 Fish Pond Rd., 2nd Floor
Waco, TX 76710
Telephone: (254) 732-2242
Facsimile: (866) 627-3509

Jonathan K. Waldrop (CA Bar No. 297903)
(*Pro hac vice* forthcoming)
jwaldrop@kasowitz.com
Darcy L. Jones (CA Bar No. 309474)
(*Pro hac vice* forthcoming)
djones@kasowitz.com
Marcus A. Barber (CA Bar No. 307361)
(*Pro hac vice* forthcoming)
mbarber@kasowitz.com
John W. Downing (CA Bar No. 252850)
(*Pro hac vice* forthcoming)
jdowning@kasowitz.com
Heather S. Kim (CA Bar No. 277686)
(*Pro hac vice* forthcoming)
hkim@kasowitz.com
ThucMinh Nguyen (CA Bar No. 304382)
(*Pro hac vice* forthcoming)
tnguyen@kasowitz.com
Jonathan H. Hicks (CA Bar No. 274634)
(*Pro hac vice* forthcoming)
jhicks@kasowitz.com
**KASOWITZ BENSON TORRES LLP**
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5171